Argued and submitted March 12, 2010, reversed on petition for review; cross-petition dismissed as moot March 2, 2011

In the Matter of the Compensation of
Gerald L. Lacy, Claimant.

LIBERTY NORTHWEST INSURANCE CORPORATION
and Johnson Crushers International, Inc.,
*Petitioners,*
*Cross-Respondents,*

*v.*

Gerald L. LACY,
*Respondent,*
*Cross-Petitioner.*

Workers' Compensation Board
0607725; A139135

250 P3d 400

David O. Wilson argued the cause and filed the briefs for petitioners - cross-respondents.

Christine Jensen argued the cause for respondent - cross-petitioner. With her on the briefs was Malagon, Moore & Jensen.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

ARMSTRONG, J.

## ARMSTRONG, J.

Liberty Northwest Insurance Corporation and Johnson Crushers International, Inc., (collectively "insurer") seek review of an order of the Workers' Compensation Board, asserting that the board erred in holding that a letter sent by claimant triggered insurer's obligation under ORS 656.268(5)(b) to respond to claimant with a notice of closure or, alternatively, a notice of refusal to close.[1] Insurer argues that the letter was not a written request for closure because it was expressly subject to a condition precedent, and, therefore, the letter contemplated a response other than one of the two potential responses provided for under ORS 656.268(5)(b)—*viz.*, a notice of closure or a notice of refusal to close. Because the parties do not dispute the relevant facts, we review the board's order for legal error. ORS 656.298(7); ORS 183.482(8)(a). We agree with insurer and, accordingly, reverse the order. Claimant cross-petitions, contending that he is entitled to his attorney fees under ORS 656.262(11)(a) (2007) as a result of insurer's unreasonable refusal to close his claim. In light of our disposition, we dismiss claimant's cross-petition as moot.

Claimant injured his cervical spine in May 2005 and filed a claim for compensation. After several surgeries, claimant's treating surgeon, Dr. Van Pett, released claimant to return to work on April 14, 2006, with several restrictions. As a result of that release, insurer asked Van Pett to clarify whether claimant's return to work was a return to regular or modified work. Van Pett responded that insurer would have to compare the restrictions she imposed with the job description for claimant's position to answer its inquiry. Insurer engaged in various efforts to determine whether claimant had returned to regular work, including an examination by an orthopedic surgeon, and, on October 11, 2006, it sent another letter to Van Pett inquiring as to whether claimant

---

[1] ORS 656.268(5)(b) provides, in relevant part:

"If the insurer * * * has not issued a notice of closure, the worker may request closure. Within 10 days of receipt of a written request from the worker, the insurer * * * shall issue a notice of closure if the requirements of this section have been met or a notice of refusal to close if the requirements of this section have not been met."

would have permanent restrictions performing his normal job.

On November 3, 2006, insurer received a letter from claimant, which stated, "Please consider this claimant's request that you close this claim *as soon as you have sufficient information to rate his permanent disability*." (Emphasis added.) After several attempts to reach Van Pett, insurer received a written response to its October 11 letter from her in late January 2007 that advised that claimant's restrictions were permanent, and, on February 9, 2007, insurer issued a notice of closure.

Before Van Pett's January response, claimant requested a hearing, arguing that he was entitled to a penalty against insurer under ORS 656.268(5)(d)[2] for its unreasonable refusal to close his claim, which included insurer's failure to respond to claimant's November 3 letter. In response, insurer argued that claimant's letter was insufficient to trigger an obligation to respond under ORS 656.268(5)(b) and that, alternatively, if the obligation to respond was triggered, then insurer acted reasonably even though it did not respond until February. An administrative law judge (ALJ) issued an order concluding that, although claimant's letter was sufficient to trigger insurer's obligation to respond, insurer's failure to respond with a notice of closure or refusal to close was not unreasonable. Accordingly, claimant was not entitled to a penalty.

Claimant appealed to the board, renewing his arguments before the ALJ, and the board reversed the ALJ's order. The board agreed with the ALJ's conclusion that claimant's letter triggered insurer's obligation to respond under ORS 656.268(5)(b); however, it disagreed with the ALJ's reasonableness determination. In that regard, the board concluded that "insurer acted reasonably in refusing to

_____

[2] ORS 656.268(5)(d) provides:

"If an insurer * * * has closed a claim or refused to close a claim pursuant to this section, if the correctness of that notice of closure or refusal to close is at issue in a hearing on the claim and if a finding is made at the hearing that the notice of closure or refusal to close was not reasonable, a penalty shall be assessed against the insurer * * * and paid to the worker in an amount equal to 25 percent of all compensation determined to be then due the claimant."

close the claim within 10 days [of] its November 3, 2006, receipt of claimant's closure request." Notwithstanding that conclusion, the board then determined that the delay between insurer's receipt of Van Pett's letter in late January 2007 and the issuance of the notice of closure on February 9, 2007, was unreasonable, and, therefore, claimant was entitled to a penalty under ORS 656.268(5)(d).

On judicial review, insurer assigns error to the board's ruling, renewing only its argument that claimant's letter did not trigger its obligation to respond to claimant with a notice of closure or refusal to close. For the reasons below, we agree with insurer.

As insurer contends, claimant's request for closure was premised on the satisfaction of a condition precedent, *viz.*, insurer obtaining sufficient information to close the claim. ORS 656.268(5)(b) creates an independent avenue for a claimant to force the insurer to make a decision regarding closure. The statute prevents unnecessary delays by the insurer in closing a claim by creating a present obligation for the insurer to respond with its decision when the claimant properly requests closure of the claim. Further, OAR 436-030-0020 creates a wholly separate, mandatory obligation to close a claim when certain conditions are satisfied. The rule provides, in relevant part:

"(1)   Provided the worker is not enrolled and actively engaged in training, the insurer must issue a Notice of Closure on an accepted disabling claim within 14 days when:

"(a)   Medical information establishes there is *sufficient information to determine the extent of permanent disability* * * * and indicates the worker's compensable condition is medically stationary[.]"

(Emphasis added.)

Here, claimant's letter requesting closure when insurer has "sufficient information to rate [claimant's] permanent disability" tracks the conditional language used in the rule and, therefore, merely served as a reminder to insurer of its legal obligation to close claimant's claim when that condition is satisfied; the letter did not convey a request by claimant for *present* closure under ORS 656.268(5)(b). The

condition expressed in claimant's letter shows that claimant knew that the other requirements for closure—those imposed by OAR 436-030-0020—might not have been satisfied at the time that claimant wrote the letter. Accordingly, we conclude that the letter did not trigger an obligation under ORS 656.268(5)(b) for insurer to respond with a notice of closure or refusal to close, and the board erred in concluding otherwise.

Reversed on petition for review; cross-petition dismissed as moot.